UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SYDNEY BURCHFIELD                                    CIVIL ACTION

VERSUS                                                    NO. 23-1501

SOUTH LOUISIANA MEDICAL                         SECTION "R"
ASSOCIATES, A PROFESSIONAL
CORPORATION

## ORDER AND REASONS

Before the Court is defendant's motion to dismiss plaintiff's Title VII and Louisiana Employment Discrimination Law claims.[1]  Plaintiff opposes the motion.[2]  For the following reasons, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

Plaintiff Sydney Burchfield brought this action against her former employer, South Louisiana Medical Associates, a Professional Corporation ("SLMA").[3]  Burchfield worked as a nurse practitioner for SLMA from December 2014 until May 6, 2021.[4]  SLMA provides medical staffing for the

---

[1]      R. Doc. 10.
[2]      R. Doc. 11.
[3]      R. Doc. 1.
[4]      *Id.* ¶ 7.

Leonard J. Chabert Medical Center ("Chabert"), an Ochsner Health facility in Houma, Louisiana.[5]  Burchfield alleges that on the night of January 18, 2021, she evaluated and treated a patient in Chabert's Emergency Department ("ED").[6]  Burchfield maintains that her care and treatment of the patient were not only proper and legal, but also complied with all SLMA and Chabert policies.[7]  The patient was also treated by three male physicians during the January shift, including Dr. Eric Brooks, Burchfield's husband.[8] The patient passed away seven days later while in the Intensive Care Unit.[9]

Burchfield alleges that three male physicians—including Dr. Falterman, Burchfield's immediate supervisor—made false and defamatory statements about her, her care of the patient, and the patient's subsequent death.[10]  These statements were allegedly made: to a Department of Health and Human Services interviewer; in the medical record; to each other; and to the patient's mother.[11]

---

[5]     *Id.* ¶ 8.
[6]     *Id.* ¶¶ 9, 14.
[7]     *Id.* ¶ 17.
[8]     *Id.* ¶ 10-12 & footnote 1.
[9]     *Id.* ¶ 13.
[10]    *Id.* ¶ 15.
[11]    *Id.*

A medical review panel was eventually formed after the patient's death, in which Burchfield, Dr. Brooks, and Chabert were listed as named parties.[12] Effective as of March 1, 2021, Burchfield was placed on paid administrative leave, allegedly without explanation.[13] Burchfield asserts that the three male physicians involved in the treatment of the patient during the January shift were not placed on leave.[14] While on leave, Burchfield contends that the Chabert Medical Executive Committee notified her that, upon her return to work, she would retain the same work privileges but would be subject to a Focused Professional Practice Evaluation.[15] Thereafter, Burchfield allegedly spoke with Dr. Falterman who informed her that, contrary to that notification, the Medical Executive Committee recommended that her privileges be significantly and permanently restricted.[16] This included restrictions on her ability to see Level 1 or 2 patients on the Emergency Severity Index or Level 3 patients deemed "sick," to perform critical care on patients, and to perform critical care procedures.[17] Burchfield contends that

---

[12]     *Id.* ¶ 16.
[13]     *Id.* ¶ 22.
[14]     *Id.* ¶ 21.
[15]     *Id.* ¶ 26.
[16]     *Id.* ¶ 27.
[17]     *Id.*

she later communicated with the Medical Executive Committee and was told that her privileges had not been restricted.[18]

Burchfield further alleges that, upon returning to work, she was assigned to less desirable shifts that resulted in reduced compensation. According to Burchfield, she historically requested and was assigned to work overnight shifts Monday through Friday, which paid $4.00 more per hour than day shifts.[19]  Burchfield contends that she made clear to SLMA that she wished to continue working the weeknight shifts when she returned from administrative leave, but SLMA ultimately assigned her "objectively less-desirable" day shifts, "inconsistent with her historic known preference of working weeknight shifts."[20]  Burchfield states that the weeknight shifts were instead filled by a male physician assistant with less experience and less seniority.[21]

Additionally, Burchfield alleges that Dr. Falterman prevented her on one occasion from changing shifts with another employee.[22]  Burchfield contends that the regular practice of Chabert ED employees is to swap shifts with one another without advance notice, as long as they confirm the changes

---

[18]     *Id.* ¶ 30.
[19]     *Id.* ¶¶ 31-33.
[20]     *Id.* ¶ 34-35.
[21]     *Id.* ¶ 37.
[22]     *Id.* ¶¶ 41-42.

on a master calendar.[23]   Burchfield also states that this practice was confirmed in an email memorandum issued by Dr. Falterman, in which he allegedly stated that shift swapping is permitted if the employees let him know "in real time" of the change and note the change on the calendar.[24] Burchfield allegedly notified Dr. Falterman on May 1, 2021, via text message that she planned to swap shifts with a coworker, and that she had made the appropriate changes to the master calendar.[25]   Dr. Falterman allegedly refused the request, which Burchfield contends contradicted SLMA's historic policy allowing for shift swapping.[26]

Finally, Burchfield alleges that Dr. Falterman told an attending physician scheduled to work with Burchfield to watch her work closely and to take patients from her or send her home if needed.[27]   Based upon this interaction, as well as Dr. Falterman's false statement that her privileges had been restricted, SLMA's assignment of Burchfield to day shifts with reduced pay, and Dr. Falterman's refusal to allow her to swap shifts with another employee, Burchfield alleges that she believed that her job was in jeopardy and that SLMA was looking for reasons to terminate her.  Thereafter, on May

---

[23]    *Id.* ¶¶ 38-40.
[24]    *Id.* ¶¶ 39-40.
[25]    *Id.* ¶ 41.
[26]    *Id.* ¶ 42.
[27]    *Id.* ¶ 43.

6, 2021, Burchfield tendered her resignation to SLMA.[28]  Burchfield contends that her resignation constituted a constructive discharge.[29]  She further alleges that the resignation was a necessary precaution to avoid the anticipated termination and revocation of her privileges, which would have affected her professional reputation and record and potentially her state licensure.[30]

Following her resignation, Burchfield filed a charge of discrimination against SLMA with the United States Equal Employment Opportunity Commission ("EEOC") on October 26, 2021.[31]  The charge proceeded to mediation, which was ultimately unsuccessful.[32]  On February 9, 2023, the EEOC terminated the processing of her charge and issued a notice of right to sue.[33]

On May 4, 2023, Burchfield filed this action against SLMA alleging claims under Title VII and the Louisiana Employment Discrimination Law ("LEDL") for gender-based discrimination, harassment and hostile work environment, and retaliation.  SLMA now moves to dismiss Burchfield's

---

[28]     *Id.* ¶ 46.
[29]     *Id.*
[30]     *Id.* ¶¶ 47-48.
[31]     *Id.* ¶ 49.
[32]     *Id.* ¶¶ 50-51.
[33]     *Id.* ¶ 52.

complaint.[34]  SLMA contends that the complaint fails to state a claim under Title VII and LEDL, and that the LEDL claims are time-barred under Louisiana's one-year prescription period.[35]  Burchfield contends that her complaint sufficiently states claims to survive the motion to dismiss stage or, in the alternative, that she should be granted leave to amend her pleading.[36]

The Court considers the parties' arguments below.

## II.   LEGAL ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and "that, if true, 'raise a right to relief above the speculative level.'" *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand*

---

[34]   R. Doc. 10.
[35]   R. Docs. 10-1 & 17.
[36]   R. Doc. 11.

*v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

### A.    Title VII of the Civil Rights Act of 1964

###### 1.    *Sex Discrimination*

Section 703(a) of Title VII makes it unlawful for employers to discriminate "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Burchfield asserts a disparate-treatment claim under Title VII, *i.e.*, that she was subject to disparate treatment because of her sex.[37]  To plead a disparate-treatment claim under Title VII, Burchfield "must allege facts plausibly showing '(1) an adverse employment action, (2) taken against [her] because of her protected status.'"[38]  *Hamilton*

---

[37]    R. Doc. 1 ¶¶ 55, 61.

[38]    The Court notes that there are four prima facie elements of a disparate-treatment claim under Title VII: (1) that plaintiff is a member of a protected class; (2) that she was qualified for the position at issue; (3) that she suffered an adverse employment action by the defendant; and (4) that she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her protected class because of her protected status.  *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)); *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)

*v. Dallas Cnty.*, No. 21-10133, 2023 WL 5316716, at *6 (5th Cir. Aug. 18, 2023) (en banc) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)).

An adverse employment action is one that affects a "term, condition, or privilege of employment." *Id.* at *5 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984) (internal quotation marks omitted)). Until recently, Fifth Circuit precedent limited the scope of adverse employment actions to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* at *3 (quoting *Welsh v. Fort Bend Ind.*

---

(citing *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 350 (5th Cir. 2008)). These elements form the *McDonnell Douglas* framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff who builds her discrimination claims on circumstantial evidence must create a presumption of discrimination by establishing these four prima facie elements under the *McDonnell Douglas* framework. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). But on a motion to dismiss, a plaintiff need only "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [her] case plausible." *Id.* (emphasis in original) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (internal quotation marks omitted)). Thus, to survive the motion to dismiss, Burchfield need only plausibly allege (1) an adverse employment action by SLMA (2) taken against her because of her sex. Nevertheless, the Fifth Circuit has recognized that it "can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.* at 767 (citing *Chhim*, 836 F.3d at 470-71).

*Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (internal quotation marks omitted)).  Under this standard, employment actions that did not affect "job duties, compensation, or benefits" were not considered adverse employment actions.  *Welsh*, 941 F.3d at 824 (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks omitted)).

But in *Hamilton v. Dallas County*, the Fifth Circuit sitting en banc recently rejected its "ultimate-employment-decision test" in favor of a less restrictive standard.  2023 WL 5316716, at *4.  Under the *Hamilton* standard, "a Title VII plaintiff may recover damages even for 'discrimination in the terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'"  *Id.* (alteration in original) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)).  The court reached this conclusion based upon the language of Section 703(a)(1), stating:

> To be sure, the statute prohibits discrimination in ultimate employment decisions—"hir[ing]," "refus[ing] to hire," "discharg[ing]," and "compensation"—*but it also* makes it unlawful for an employer "otherwise to discriminate against" an employee "with respect to [her] terms, conditions, or privileges of employment."
>
> Our ultimate-employment-decision test ignores this key language. . . . Restricting liability under the statute to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" renders the statute's catchall provision all but superfluous.  This we cannot do.

*Id.* at *4-5 (alterations and emphasis in original) (footnotes omitted).

With this framework in mind, the Fifth Circuit has made clear that to satisfy the "adverse employment action" requirement, "a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Id.* at *6 (quoting 42 U.S.C. § 2000e-2(a)(1)) (citing *Hishon*, 467 U.S. at 77). Although the criteria for an adverse employment action are broad, the Fifth Circuit stated that Title VII "does not permit liability for de minimis workplace trifles." *Id.* at *7 (citations omitted).

Next, Burchfield must plausibly allege facts suggesting "any adverse actions taken *because of*" her sex. *Cicalese*, 924 F.3d at 767 (emphasis in original). While Burchfield need not "provide a detailed statistical analysis at the pleading stage," her allegations "must demonstrate some causal relationship — some 'because' — between [her sex] and the adverse employment action." *Williams v. La. ex rel. Dep't of Pub. Safety & Corr.*, No. 22-30385, 2023 WL 2366980, at *2 (5th Cir. Mar. 6, 2023). To do so, Burchfield's complaint must contain facts, either direct or circumstantial, suggesting that SMLA's actions were based on her sex or that SMLA treated "similarly situated employees" of a different sex more favorably. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (holding that district court

11

properly dismissed discrimination claims when plaintiff's "complaint and speculation did not allege any facts, direct or circumstantial, that would suggest [defendant's] actions were based on [plaintiff's] race or national origin or that [defendant] treated similarly situated employees of other races or national origin more favorably").

Burchfield's complaint alleges several employment actions that she contends amount to sex discrimination based on disparate treatment, including: (1) SMLA's placing her on paid administrative leave without explanation, (2) Dr. Falterman advising her that her privileges and job responsibilities would be drastically reduced, (3) SMLA's assigning her to less desirable shifts resulting in reduced pay, and (4) SMLA's constructively discharging her.[39]  The Court will evaluate each disparate treatment claim in turn.

### i.  *Paid administrative leave*

Burchfield contends that SLMA's decision to place her, and none of the male physicians, on paid administrative leave following the January shift constitutes a discriminatory adverse employment action.  But Burchfield fails to plead facts plausibly showing that this adversely affected the

---

[39]     R. Doc. 1 ¶¶ 55, 60.

"compensation, terms, conditions, or privileges of [her] employment."  42 U.S.C. § 2000e-2(a)(1).  Nowhere in the complaint does Burchfield allege that she lost pay or benefits while on leave.  Nor does she allege that her placement on temporary paid leave affected a term or condition of her employment.

The Fifth Circuit has held that an employer's decision to place an employee on paid leave, whether administrative or sick, by itself does not constitute an adverse employment action.  *See Hardison v. Skinner*, No. 20-30643, 2022 WL 2668514, at *2 (5th Cir. July 11, 2022) (per curiam) ("[P]lacement on paid administrative leave by itself [ ] does not constitute an adverse employment action."); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (holding that placement on paid administrative leave for three weeks, without other adverse consequences, was not an adverse employment action); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("[T]he district court properly held that placing [plaintiff] on paid leave—whether administrative or sick—was not an adverse employment action."); *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000) (holding that police officer placed on paid administrative leave did not suffer an adverse employment action)).  This is consistent with precedent in other circuits.  *See, e.g.*, *Brown v. Austin*, 13 F.4th 1079, 1091-92 (10th Cir. 2021)

(finding no adverse employment action based on paid administrative leave and reprimand letter where plaintiff "lost no pay or benefits from these events"); *Lincoln v. Maketa*, 880 F.3d 533, 542 (10th Cir. 2018) ("[W]e do not regard placement on paid administrative leave as a clearly established adverse employment action."); *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) ("A paid suspension pending an investigation of an employee's alleged wrongdoing does not fall under any of the forms of adverse action mentioned by Title VII's substantive provision."); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (holding placement on paid administrative leave for three months was not an adverse employment action); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (finding no adverse employment action when placed on paid administrative leave pending the outcome of an investigation, without a change in position or benefits).

Without more, Burchfield has not made a sufficient allegation of an adverse employment action based on her paid administrative leave.

Additionally, Burchfield has failed to sufficiently plead facts supporting the second element of her disparate-treatment claim: that she

was placed on administrative leave *because of* her sex.  *See Hamilton*, 2023 WL 5316716, at *6.  Burchfield's sole sex-based allegation supporting this claim is that, unlike the male physicians she worked with during the January shift, she alone was placed on paid administrative leave.  But she does not allege any direct facts of a discriminatory motive.  *Cf. Cicalese*, 924 F.3d at 767-68 (finding plaintiffs' direct factual allegations of derogatory remarks about race sufficient to plead discriminatory motive).  Nor does she plead circumstantial facts supporting the inference that she was "similarly situated" to these male physicians.  *See Coleman v. Kijakazi*, No. 21-10399, 2023 WL 2660167, at *2 (5th Cir. Mar. 28, 2023) ("For a comparator to be similarly situated, . . . they must be 'under nearly identical circumstances.'" (citation omitted)); *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 117, 185 (5th Cir. 2018) ("A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications."); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) ("[E]mployees who have different work responsibilities . . . are not similarly situated." (citation omitted)).  It is true that when a plaintiff plausibly alleges similarly situated comparators, the Court must not scrutinize whether the comparators are "really 'similarly situated'" on a motion to dismiss.  *See Cicalese*, 924 F.3d at 768 (involving

allegations that two professors of surgery and medicine at a university medical center were similarly situated to other medical professors with allegedly less experience).  Nevertheless, the lack of *any* factual basis for this element means that Burchfield's claim does not survive a Rule 12(b)(6) motion.  *See Raj*, 714 F.3d at 331 (affirming district court's dismissal of Title VII disparate-treatment claim when plaintiff "did not allege any facts, direct or circumstantial," suggesting that his employer treated similarly situated employees outside of his protected class more favorably).

Because Burchfield has failed to raise her "right to relief above the speculative level," this claim must be dismissed as a matter of law.  *Twombly*, 550 U.S. at 555.

### ii.    *Dr. Falterman's statement*

Dr. Falterman's allegedly false statement informing Burchfield of restrictions on her privileges and responsibilities likewise does not constitute an adverse employment action.  Burchfield fails to plausibly allege how restrictions never imposed adversely affected the terms, conditions, and privileges of her employment.  Indeed, Burchfield herself states that Dr. Falterman's inaccurate representations were refuted by the Medical

Executive Committee before she returned to work.[40]  She specifically asserts that, after speaking with Dr. Falterman, she "subsequently communicated with the [Medical Executive Committee] and was told that her privileges had not been restricted."[41]  Dr. Falterman's statement thus had no impact on a term, condition, or privilege of Burchfield's employment, and does not constitute an adverse employment action.  *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding that statements made to an employee did not constitute adverse employment actions "because of their lack of consequence").

Burchfield argues that she would have been effectively demoted had her privileges been restricted as Dr. Falterman represented, and that this demotion constitutes an ultimate employment decision.[42]  But this argument fails because the alleged demotion did not come to fruition.  Similar allegations were rejected by the Seventh Circuit in *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520 (7th Cir. 2003).  In that case, the plaintiff received a memorandum from her employer stating that her position was being eliminated and that she would be demoted.  *Id.* at 531.

---

[40]     *Id.* ¶ 30.
[41]     *Id.*
[42]     *Id.* ¶¶ 29, 57.

But the plaintiff admitted that the threatened demotion never actually transpired. *Id.*  The Seventh Circuit stated that "[a]n unfulfilled threat, which results in no material harm, is not materially adverse." *Id.* (citations omitted).  Thus, because the threatened demotion never happened, the court held that this unfulfilled threat did not constitute an adverse employment action. *Id.*

Burchfield also alleges that Dr. Falterman's discussion with an attending physician, telling him to watch Burchfield's work closely and to take patients from her or send her home if needed, demonstrates that he "followed through on his conversation . . . by actually restricting her work privileges."[43] This allegation likewise fails because Burchfield alleges that the attending physician was upset by Dr. Falterman's suggested supervision and told Dr. Falterman that "he should take up any issues he had with [Burchfield] directly with her."[44]  Burchfield alleges no action taken by the attending in response to Dr. Falterman's remarks.  Thus, Burchfield has not plausibly alleged that Dr. Falterman's suggestions resulted in actions affecting the terms, conditions, or privileges of Burchfield's employment. *See, e.g.*, *Magiera v. City of Dallas*, 389 F. App'x 433, 437-38 (5th Cir. 2010)

---

[43]    R. Doc. 11 at 6-7.
[44]    R. Doc. 1 ¶ 44.

(holding that an employer's investigation of complaints with heightened scrutiny was not an adverse employment decision); *Muse v. Jazz Casino Co., LLC*, No. 09-0066, 2010 WL 2545278, at *3 (E.D. La. June 16, 2010) (finding no adverse employment decision when a supervisor's close scrutiny of plaintiff's work did not "rise any higher than" a petty slight or inconvenience).

Burchfield's complaint is also devoid of any facts plausibly suggesting that Dr. Falterman's statements were made because of her sex, or that "similarly situated employees" of a different sex were treated more favorably. Without sufficient facts supporting either element of her Title VII disparate treatment claim, this claim must be dismissed as a matter of law.

### iii.   Day shifts and loss of wages

Burchfield alleges that a discriminatory adverse employment action occurred when SLMA assigned her to less desirable day shifts resulting in reduced pay.[45]  Here, Burchfield plausibly alleges that this conduct amounts to an adverse employment action.  The Fifth Circuit has indicated that a shift change may constitute an adverse employment decision under Title VII if it also affects the employee's "job duties, compensation, or benefits."  *Cf.*

---

[45]     *Id.* ¶¶ 31-37, 60.

*Hernandez v. Sikorsky Support Servs., Inc.*, 495 F. App'x 435, 438 (5th Cir. 2021) (finding no adverse employment decision when plaintiff did not demonstrate an objective loss in compensation, duties, or benefits when denied her first choice on her shift-request documents). Burchfield alleges that she was assigned to less desirable day shifts resulting a $4.00 per hour reduction in compensation. Accepted as true, these allegations suffice to plausibly allege an adverse employment action with respect to Burchfield's compensation.

This result is also supported by the Fifth Circuit's recent decision in *Hamilton.* 2023 WL 5316716, at *1-8. There, the court considered allegations that the Dallas County Sheriff's Department gave its detention service officers two days off each week and permitted only men to select full weekends off, while female officers could pick only two weekdays off or one weekend day and one weekday off. *Id.* at *1. The court held that the plaintiffs plausibly alleged an adverse employment action with respect to the terms, conditions, and privileges of their employment. *Id.* In so concluding, the Fifth Circuit expressed agreement with the Sixth Circuit's decision in *Threat v. City of Cleveland*, which held that a "shift schedule is a term of employment" for Title VII purposes and that allegations of a sex-based system to assign day and night shifts alleged discrimination in the terms,

conditions, and privileges of employment. *Id.* at *6 (citing and quoting *Threat v. City of Cleveland,* 6 F.4th 672, 676-77 (6th Cir. 2021)). As the Fifth Circuit reasoned, "[t]he days and hours that one works are quintessential 'terms or conditions' of one's employment." *Id.* Here, Burchfield's complaint clearly states that her shifts and pay were affected by SLMA's scheduling decisions. She has thus sufficiently pleaded facts supporting the first element of this disparate-treatment claim.

Next, Burchfield must satisfy the second element: "whether [SLMA] took the adverse employment action against [her] *because of* her protected status." *Raj*, 714 F.3d at 331 (emphasis in original) (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004) (internal quotation marks omitted)). The discriminatory basis for Burchfield's claim is that she was assigned to the less desirable and less compensated day shifts, while a male physician assistant with less experience and seniority was assigned to work the night shifts.[46] The Court finds that this allegation meets the pleading standard. Burchfield has sufficiently alleged that SLMA treated her less favorably with regard to shift scheduling than a similarly situated male employee with allegedly fewer qualifications. *See Cicalese*, 924 F.3d at 768 (holding that plaintiffs plausibly alleged discriminatory motive by

---

[46]     *Id.* ¶ 37.

circumstantial factual allegations that similarly situated employees with allegedly less experience were treated more favorably).  Accepted as true, these allegations are sufficient to state a disparate treatment claim under Title VII at the pleading stage.  SLMA's motion is therefore denied as to this claim.

### iv.    Constructive discharge

"A constructive discharge claim is based on a plaintiff's actual resignation, without which no discharge—constructive or otherwise—has occurred."  *Raj*, 714 F.3d at 330.  An employee may be constructively discharged in several ways, including by:

> (1) demotion;  (2) reduction in salary;  (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge."  *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 142-43 (2004)).    Consideration of whether the plaintiff was

constructively discharged is to be viewed in the totality of the circumstances. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

To state a claim of constructive discharge, a plaintiff's complaint must include "two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee." *Green*, 578 U.S. at 555. To satisfy the first pleading requirement, Burchfield must plausibly "allege that working conditions became 'so intolerable that a reasonable person would have felt compelled to resign.'" *Mandujano v. City of Parr*, 786 F. App'x 434, 437 (5th Cir. 2019) (quoting *Pa. State Police*, 542 U.S. at 147); *see also Green*, 578 U.S. at 555 ("The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" (quoting *Pa. State Police*, 542 U.S. at 141)). A constructive discharge claim "requires a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Discrimination or "[m]ere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004); *see also Brown*, 237 F.3d at 566 ("Discrimination, alone, without aggravating factors,

23

is insufficient for a claim of constructive discharge.").  Next, Burchfield must allege that, as a result of the discriminatory conduct, she actually resigned. *See Green*, 578 U.S. at 555.

Burchfield's complaint states that she resigned on May 6, 2021, thus satisfying the second pleading requirement.  As for the first requirement, she contends that her constructive discharge stemmed from: (1) Dr. Falterman's threatened demotion with restricted privileges; (2) the reduction in her pay from the shift changes; (3) Dr. Falterman's refusal to approve a shift swap request despite the historic company policy permitting such changes; and (4) the defamatory statements made by male SLMA employees, including supervisors, about her and her work.[47]  Accepted as true, these allegations are insufficient to support her constructive discharge claim.

As discussed,[48] Dr. Falterman's threatened "demotion" was just that—an unfulfilled threat that had no genuine impact on Burchfield's employment or privileges.  This conversation with Dr. Falterman does not rise to such an extreme level that it may be classified as "harassment" intended to encourage her resignation.  *See McElroy v. PHM Corp.*, 622 F. App'x 388, 390-92 (5th Cir. 2015) (holding that a supervisor's verbal threat to fire black employee

---

[47]     *Id.*

[48]     *See supra* Section III.A.1.ii.

did not constitute constructive discharge under Title VII because it did not make working conditions so intolerable that a reasonable employee would feel forced into involuntary resignation).   Further, Burchfield makes no allegation suggesting that Dr. Falterman's statement was made on the basis of her sex.  *See Green*, 578 U.S. at 556 (holding that a constructive discharge claim requires plaintiff to allege *discriminatory* conduct by the employer); *see also English v. Perdue*, 777 F. App'x 94, 100 (5th Cir. 2019) ("That another employee was treated better and given more opportunities does not become actionable under federal law just because she was female. . . . More is needed to raise [plaintiff's] claims above a speculative level.").

The complaint further alleges only one instance in which Burchfield was denied the ability to change shifts with another employee.   Again, Burchfield makes no allegation that the shift-swap decision was based on her sex.   Moreover, this de minimis incident, together with Dr. Falterman's statement, do not create conditions so intolerable that a reasonable person would have felt compelled to resign.  *See Judeh v. T-Mobile Cent. L.L.C.*, No. 22-1130, 2023 WL 246843, at *5 (E.D. La. Jan. 18, 2023) (dismissing constructive discharge claims based on a "few, isolated instances of harassment" that are not so intolerable that a reasonable person would feel compelled to resign).

25

Burchfield's allegations of defamatory statements by male doctors likewise fail to plausibly allege conduct based on her sex. Burchfield alleges that male supervisors and physicians "made false and defamatory statements to third parties" about her, her care of the patient, and the patient's death.[49] Burchfield fails to allege what content of these statements or other facts suggest that the statements were made based on her sex. Her only sex-based allegation is that the speakers were men, and she was a woman. Statements made by men about a woman, without more, are not enough to give rise to a Title VII claim. *See Green*, 578 U.S. at 556. These allegations fail to meet the constructive discharge standard.

This leaves Burchfield's allegations of reduced pay associated with her assignment to day shifts. Burchfield does not allege that she was permanently assigned to day shifts, and it is apparent from the complaint that she endured the shift change for less than one month because she resigned on May 6 and was on leave until at least April 7. As such, the denial of her preferred shifts and receipt of $4.00 less per hour for an unspecified number of shifts over less than a month is not so severe and intolerable that an objective, reasonable employee would be compelled to resign.

---

[49]     R. Doc. 1 ¶ 15.

Considering the totality of Burchfield's allegations, and accepting those allegations as true, the Court is unpersuaded that she sufficiently alleged such extreme, discriminatory harassment that a reasonable employee would have felt compelled to resign. *See Plustache v. Harrison*, No. 22-30110, 2023 WL 3197043, at *2 (5th Cir. May 2, 2023) (holding that district court did not err in dismissing meritless constructive discharge claim when there was no authority suggesting that plaintiff's "allegations are of harassment so extreme that a reasonable employee would have felt compelled to resign"). Additionally, the Fifth Circuit has recognized that, "[i]n the constructive discharge context, . . . 'part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast.'" *Aryain*, 534 F.3d at 481-82 (quoting *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987)) (dismissing plaintiff's constructive discharge claim when plaintiff resigned "just a day or two" after alleged negative treatment, which did not give the employer an adequate opportunity to improve her situation). Here, Burchfield resigned on May 6, 2021—less than one month after she returned to work and nine days after Dr. Falterman denied her shift-swap request. This further supports a finding that the alleged conduct was not so "severe" to cause a reasonable employee to resign. *See Haley*, 391 F.3d at 652 (noting that a reasonable employee

often should pursue less drastic options before choosing to leave her job). The Court thus finds Burchfield's constructive discharge claim is not facially plausible, and the claim is dismissed.

### 2.   *Retaliation*

Title VII makes it unlawful to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  To state a retaliation claim, plaintiff must allege: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).  "Although a plaintiff need not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim," the three prima-facie elements have "some relevance at the motion-to-dismiss stage, because in order to sufficiently state at Title VII-retaliation claim, a plaintiff must plead sufficient facts on all of the ultimate elements to make her case plausible." *Goings v. Lopinto*, No. 22-2549, 2023 WL 2709826, at *9 (E.D. La. Mar. 30, 2023) (quoting *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (internal quotation marks omitted)).

As to the first element, "[a]n employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petrol. Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)). "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). Under the opposition clause, a plaintiff need not allege that the complained-of employment practice is actually unlawful; rather, she need only show that she had "a reasonable belief that defendant had engaged in the unlawful employment practices." *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137 (5th Cir. 1981); *see also Rite Way Serv.*, 819 F.3d at 240 (affirming *Payne*'s "reasonable belief" standard). Thus, internally complaining about an employment practice may constitute protected activity, so long as the complainant "reasonably believed the employment practice to be unlawful." *Rite Way Serv.*, 819 F.3d at 240; *see also Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x. 322, 328 (5th Cir. 2013) ("An employee that files an internal complaint of discrimination engages in a

29

protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001))).

Here, Burchfield alleges that she engaged in a protected activity because she "raised concerns" with SLMA about her reduced work privileges following her conversation with Dr. Falterman.[50]  The only specific communication about Dr. Falterman's statement alleged anywhere in the complaint is that after her conversation with Dr. Falterman, Burchfield "communicated with the [Chabert Medical Executive Committee] and was told that her privileges had not been restricted."[51]  Accepting as true that Burchfield "raised concerns" about Dr. Falterman's statement and considering the alleged content of his statement, the Court finds that Burchfield plausibly alleged that she opposed Dr. Falterman's statement about threatened reductions in her privileges.

Nevertheless, Burchfield's opposition to Dr. Falterman's statement does not constitute a protected activity because she does not contend, and the complaint does not allege, that she alerted the Committee or SLMA to any belief that unlawful *sex discrimination* was at issue.  *See Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam)

---

[50]    *Id.* ¶ 65.
[51]    *Id.* ¶ 30.

(holding that, to satisfy the opposition clause requirement, "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue"). Only complaints about discrimination prohibited by Title VII, including discrimination on the basis of sex, constitute protected activity for purposes of a retaliation claim. *See Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) ("Importantly, 'Title VII protects an employee only from retaliation for complaining about the types of discrimination it prohibits.'" (quoting *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 307 (5th Cir. 2019))); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *see also Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018) (holding that plaintiff's formal personnel grievance, which alleged that defendant improperly changed her shift assignments, was not protected activity under Title VII's antiretaliation provision because the grievance did not claim that what happened to her was due to race, color, national origin, sex, or religion).  Burchfield states in her complaint that she raised concerns with SLMA "regarding [the] restricted privileges" threatened by Dr.

Falterman.[52]  This factual allegation, without more, does not support the inference that Burchfield opposed any form of sex discrimination.

Further, even if Burchfield subjectively believed that SLMA was engaged in unlawful sex discrimination practices at the time she allegedly raised her concerns, her belief "cannot be reasonable if it is settled law that the conduct in question does not amount to an unlawful employment practice." *Evans-Rhodes v. Nw. Diagnostic Clinic, P.A.*, No. 4:13-CV-01626, 2013 WL 5603003, at *4 (S.D. Tex. Oct. 11, 2013) (citing *Wilson v. Delta State Univ.*, 143 F. App'x 611, 613-14 (5th Cir. 2005)).  As discussed,[53] Dr. Falterman's statement had no consequential impact on Burchfield's job duties, compensation, or terms, conditions, or privileges of her employment; thus, his conduct is not actionable under Title VII.  *See Mattern*, 104 F.3d at 708 (holding that statements made to an employee did not constitute adverse employment actions "because of their lack of consequence").

Burchfield also fails to allege sufficient facts supporting the third element of her retaliation claim.  "To establish a causal link between the protected activity and the adverse employment decision, the evidence must demonstrate that the decision maker had knowledge of the protected

---

[52]    *Id.* ¶ 65.

[53]    *See supra* Section III.A.1.ii.

activity." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)). Burchfield contends that SLMA took two adverse employment actions against her when it assigned her to less-desirable day shifts with reduced compensation and prohibited her from swapping shifts.[54]  But nowhere in her complaint does she allege that these retaliatory actions were taken by SLMA employees who had knowledge of any concerns she allegedly raised.

Because Burchfield failed to plead sufficient facts on all of the ultimate elements of her Title VII retaliation claim, this claim is dismissed.

3.   *Hostile Workplace Environment*

The Supreme Court has held that Title VII proscribes the creation of "a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21.  To state a claim for hostile work environment, a plaintiff must allege that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

---

[54]   R. Doc. 1 ¶¶ 65, 67.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

An employee has a cause of action under Title VII when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (citations and internal quotation marks omitted). But "not all harassment, including 'simple teasing, offhand comments, and isolated incidents (unless extremely serious),' will affect a 'term, condition, or privilege of employment.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999)). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (internal quotation marks omitted)). A plaintiff must subjectively perceive the environment to be abusive, and the work environment must be objectively hostile or abusive. *See Harris*, 510 U.S. at 21-22.

In Burchfield's complaint, she alleges that SLMA fostered a hostile work environment based on her sex. She specifically alleges that SLMA and its employees engaged in harassment by:

1. Making false statements about her and her job performance;

2. Placing her, and none of the male physicians from the January shift, on paid administrative leave;

3. Giving her false information about restrictions to her privileges and job responsibilities;

4. Scheduling her for less-favorable day shifts that would result in a reduction in pay, while giving a less experienced male coworker her usual night shifts; and

5. Denying her the ability to swap a shift with a coworker.

Burchfield contends that these acts caused her to feel humiliated and ostracized, affecting her privileges and working conditions and resulting in a constructive discharge.[55]

Taking these allegations as true, Burchfield fails to allege "extreme conduct" that "amounts to discriminatory changes in the terms and conditions of employment." *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 739 (E.D. La. 2019). As an initial matter, Burchfield's first,

---

[55]     *Id.* ¶ 76.

third, and fifth allegations fail because she does not allege facts plausibly suggesting that these acts or statements were "based on her [sex]." *Hernandez*, 670 F.3d at 651. As explained by the Supreme Court, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *'discriminat[ion]* . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original). Thus, the "critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (citation and internal quotation marks omitted). Burchfield has failed to offer any facts supporting the inference that these allegations of harassment were based on her sex or had a discriminatory character or purpose. *See Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 917 (5th Cir. 2006) (finding no error when district court held that there was no evidence that "alleged harassing events were based on plaintiff's race or had a racial character or purpose" to support hostile work environment claim). Additionally, as previously discussed in relation to her discrimination claims, the second and third allegations of harassment fail because they did not affect a term, condition,

or privilege of Burchfield's employment.[56]  As pled, these allegations cannot form the basis of her hostile work environment claim.

Burchfield's fourth allegation of harassment also fails.   Although Burchfield contends that she subjectively experienced harassment when she was scheduled for day shifts, this alone is insufficient to support her claim. She must also allege "that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris-Childs*, 169 F. App'x at 917 (citing *Harris*, 510 U.S. at 370).  Here, Burchfield offers no allegations that SLMA's decision to schedule her for day shifts was so severe or humiliating to constitute harassment.  *See Harris-Childs*, 169 F. App'x at 917 (finding plaintiff's allegations that employer treated her worse than non-African American employees in terms of scheduling, work performance expectations, and disciplinary incident were insufficient to establish a hostile work environment claim).

Accordingly, Burchfield's hostile workplace environment claim is dismissed.

---

[56]    *See supra* Sections III.A.1.i & III.A.1.ii.

### B.    The State Law Claims

SLMA also moves to dismiss Burchfield's state law claims on the grounds of prescription.  The Louisiana Employment Discrimination Law ("LEDL"), La. Stat. Ann. §§ 23:301, *et seq.*, provides a one-year prescriptive period.  The prescriptive period runs from the date of an allegedly unlawful employment act, but it is suspended during the pendency of an EEOC investigation for a period not to exceed six months.   La. Stat. Ann. § 23:303(D).  Thus, there is "a maximum prescriptive period of eighteen months for claims based on violations of [Louisiana Revised Statute section 23:301]." *Riggs v. DXP Enters., Inc.*, No. 18-729, 2019 WL 310053, at *5 (W.D. La. Jan. 8, 2019); *see also Snow v. Cracker Barrel Old Country Store, Inc.*, No. 15-2375, 2015 WL 5276772, at *2 (E.D. La. Sept. 8, 2015) ("In application, [Louisiana Revised Statute section 23:303(D)] requires a plaintiff to bring his LEDL claim within a maximum of eighteen months from the day he learns of the conduct creating his grievance.").  Generally, the party asserting prescription has the burden of proof at trial.   But if prescription is revealed to have run on the face of plaintiff's complaint, the burden shifts to plaintiff to show that her claim is not prescribed. *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994); *Winstead v. Ga. Gulf Corp.*, 77 Fed. App'x 267, 272 (5th Cir. 2003); *see also Netherland v. Ethicon, Inc.*, 813

So. 2d 1254, 1261 (La. App. 2 Cir. 2002) ("When the plaintiff's claim is prescribed on its face and the plaintiff asserts the doctrine of *contra non valentem*, the plaintiff is required to prove the facts establishing *contra non valentem*.").

Because Burchfield resigned on May 6, 2021, the last possible date on which she could have filed suit was November 6, 2022. She did not do so until May 4, 2023, nearly twenty-four months after her resignation. Thus, on the face of Burchfield's complaint, her LEDL claims are prescribed. The burden now shifts to Burchfield to show that her claims are not prescribed.

Burchfield contends that her LEDL claims are not prescribed because prescription was interrupted by the filing of a defamation suit in Louisiana state court.[57] According to Burchfield, she filed the state court action on January 18, 2022, against three male SLMA employees and SLMA for false and defamatory statements made by these individuals during the course and scope of their employment.[58] But Burchfield does not cite to any legal standard supporting this argument. She thus fails to negate the presumption of prescription on this ground.

---

[57] R. Doc. 11 at 20-21.

[58] R. Doc. 1 at 3 n.2 (noting that the action is currently pending as *Sydney Burchfield, N.P. v. South Louisiana Medical Associates, et al.* in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, Case No. 192750, Division "D").

Burchfield further contends that because she did not receive the right to sue notice from the EEOC until February 9, 2023, she was unable to commence this action until after that date.[59]  This argument is without merit. The Fifth Circuit has made clear that the filing of an EEOC charge "does not toll, interrupt, or suspend prescription with regard to a plaintiff's state law claims." *Fussell v. Bellsouth Commc'ns, Inc.*, No. 96-1660, 1998 WL 12229, at *2 (E.D. La. Jan. 8, 1998) (citing *Taylor v. Bunge Corp.*, 775 F.2d 617 (5th Cir. 1985)); *see also Rivera v. Louisiana*, No. 04–3327, 2006 WL 901826, at *6 (E.D. La. Mar. 31, 2006) (collecting cases).   To bring suit under Louisiana's anti-discrimination statute, a plaintiff need only provide the defendant with thirty days' notice of the allegations, whether through an EEOC charge or otherwise.  *See Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 889 (W.D. La. 2003) (citing La. Stat. Ann. § 23:303(C)).  Burchfield could have filed her action in state court and obtained a stay while pursuing her Title VII remedies.   *See Rivera*, 2006 WL 901826, at *6 (citing *Brouillette v. Transamerican Ref. Corp.*, No. 95-0584, 1995 WL 683869, at *5 (E.D. La. Nov. 11, 1995)).  Because this was an available course of action, Burchfield was not prevented from acting, and the doctrine of *contra non*

---

[59]      R. Doc. 11 at 20-21.

*valentem* does not apply.   Accordingly, the Court dismisses Burchfield's claims under LEDL as prescribed.

### C.     Leave to Amend

Burchfield requests leave to amend her complaint.   The Court will "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a). The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).   Nevertheless, leave to amend "is by no means automatic." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). The Court considers multiple factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182.  Amendment is deemed futile if, for instance, "it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Coll. Athl. Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *Vlasek v. Wal-Mart Stores, Inc.*, No. H-07-0386, 2007 WL 2402183, at *3 (S.D. Tex. Aug. 20, 2007) (leave to amend should be denied if "allegations of other facts

consistent with the challenged pleading could not possibly cure the deficiency").

The Court finds that amendment of Burchfield's Title VII discrimination claims based on her paid administrative leave and Dr. Falterman's statement, as well as her LEDL claims would be futile. These claims are dismissed as a matter of law. The Court grants Burchfield's request for leave to amend her Title VII constructive discharge, retaliation, and hostile work environment claims. The Court notes that any amended pleading must not create allegations outside the scope of the EEOC charge. *See Pacheco*, 448 F.3d at 789 ("Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." (internal citation and quotation marks omitted)); *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 291 (5th Cir. 2020) ("The universe of claims a plaintiff can properly advance in a Title VII suit is set by the contours of the administrative process."); *see also Aucoin v. Kennedy,* 355 F. Supp. 2d 830, 840 (E.D. La. 2004) (holding that a plaintiff "may not circumvent the EEOC filing requirements by raising only a few claims in her EEOC filings, and later suing over every claim arising out of her employment").

## III.   CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The Court denies defendant's motion on plaintiff's Title VII discrimination claim based on the night-to-day shift changes and reduced compensation.  The Court grants defendant's motion on plaintiff's Title VII discrimination claims based on her paid administrative leave and Dr. Falterman's statement, as well as her LEDL claims.  These claims are DISMISSED WITH PREJUDICE.  The Court grants defendant's motion on plaintiff's Title VII constructive discharge, retaliation, and hostile work environment claims.   These claims are DISMISSED WITHOUT PREJUDICE, and plaintiff is granted twenty-one days to amend the complaint with respect to these claims.

New Orleans, Louisiana, this   13th   day of September, 2023.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

43