**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SYDNEY BURCHFIELD**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 23-1501**

**SOUTH LOUISIANA MEDICAL**                        **SECTION "O"**
**ASSOCIATES, A PROFESSIONAL**
**CORPORATION**

**ORDER AND REASONS**

Before the Court is a partial Rule 12(b)(6) motion[1] by Defendant South Louisiana Medical Associates, a Professional Corporation ("SLMA"), to dismiss the Title VII constructive-discharge and hostile-work-environment claims in Plaintiff Sydney Burchfield's first amended and superseding complaint.[2] Burchfield opposes.[3] For the following reasons, SLMA's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

From December 2014 until May 6, 2021, Burchfield worked as a nurse practitioner for SLMA.[4] While working in that capacity on January 18–19, 2021 (the "January shift"), Burchfield evaluated and treated a patient in the Emergency Department at Leonard J. Chabert Medical Center.[5] The patient died approximately one week later.[6]

---

[1] ECF No. 21.
[2] ECF No. 19.
[3] ECF No. 22.
[4] ECF No. 19 ¶ 6. Because this case comes to the Court on SLMA's 12(b)(6) motion to dismiss, the facts that follow are drawn from the well-pleaded allegations of Burchfield's first amended and superseding complaint, which the Court must accept as true and view in a light most favorable to Burchfield. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[5] ECF No. 19 ¶¶ 7–8.
[6] *Id.* ¶ 12.

1

Burchfield was the only female SLMA employee who treated the patient during the January shift,[7] although three male physicians—including Burchfield's husband, Dr. Eric Brooks—also evaluated and treated the patient during the shift.[8] Burchfield maintains that her care of the patient was "proper" and "fully complied with all SLMA and Chabert policies and with applicable law."[9] According to Burchfield, "multiple physicians" later deemed her care of the patient "appropriate" and "meeting and/or exceeding the standard of care."[10]

Yet, according to Burchfield, three other male SLMA physicians, including Burchfield's immediate supervisor, Dr. Falterman, made false and defamatory statements about Burchfield and her care of the patient.[11] The physicians made these statements to a Department of Health and Human Services interviewer; in the medical record; to each other; and to the patient's mother.[12] The physicians made no such disparaging remarks about any SLMA male employees who treated the patient.[13]

Effective March 1, 2021, Burchfield was placed on paid administrative leave, initially without explanation.[14] Burchfield later learned that she had been placed on

---

[7] *Id.* ¶ 13.

[8] *Id.* ¶¶ 9–13, 14. Dr. Brooks was the attending physician who was "overseeing and ultimately responsible for" the patient in the Emergency Department. *Id.* ¶ 21.

[9] *Id.* ¶ 17. A medical review panel was formed to review the treatment of the patient by Burchfield, Dr. Brooks, and Chabert. *Id.* ¶ 16. According to the amended and superseding complaint, the panel has not yet convened. *Id.*

[10] *Id.* ¶ 18.

[11] *Id.* ¶¶ 14–15.

[12] *Id.* ¶ 14.

[13] *Id.* ¶ 15.

[14] *Id.* ¶¶ 19–20. The amended and superseding complaint is silent as to the amount of time Burchfield spent on leave. However, Burchfield's response to the motion to dismiss claims that Burchfield was on leave for "two months." ECF No. 22 at 4. And Burchfield's initial complaint reflects that Burchfield was on leave from March 1, 2021 until at least April 7, 2021. ECF No. 1 ¶ 26.

leave because she was the subject of an active investigation.[15] According to Burchfield, no male physician who treated the patient during the January shift was placed on leave, even though Dr. Brooks was also the subject of an investigation.[16]

In Burchfield's telling, after returning from leave, she encountered discrimination from SLMA in three respects. First, Burchfield was assigned less-desirable shifts that resulted in reduced compensation.[17] Burchfield claims that she historically requested and was assigned to work overnight shifts, which paid $4.00 more per hour than day shifts.[18] But when she returned from leave, SLMA began assigning her "objectively less-desirable" day shifts "inconsistent with her historic known preference for working weeknight shifts."[19] According to Burchfield, the overnight shifts were instead assigned to a male employee with "far less experience and less seniority."[20]

Second, Burchfield claims that, on one occasion, Dr. Falterman denied her request to swap shifts with another employee.[21] According to Burchfield, employees routinely swapped shifts without advance notice to Dr. Falterman.[22] Dr. Falterman only required an employee to notify him "in real time" of a shift-swap.[23] On May 1, 2021, Burchfield notified Dr. Falterman via text message that she intended to swap

---

[15] ECF No. 19 ¶ 22.
[16] *Id.* ¶¶ 21–23.
[17] *Id.* ¶¶ 26–32.
[18] *Id.*
[19] *Id.* ¶ 29.
[20] *Id.* ¶ 32.
[21] *Id.* ¶¶ 33–38.
[22] *Id.* ¶ 33.
[23] *Id.* ¶¶ 34–35.

shifts with a coworker.[24] Dr. Falterman refused Burchfield's request.[25] This is despite "no other male SLMA employee similarly situated to Ms. Burchfield" being required to obtain approval from a supervisor before changing shifts.[26] Burchfield further claims that "only [she] was suddenly prohibited from swapping shifts without advance notice to her supervisor," whereas "every other SLMA employee" could change shifts without advance notice.[27]

Third, Burchfield alleges that, "in or around May 2021," Dr. Falterman told another physician scheduled to work with Burchfield to watch her "very closely," to review her charts, and to take patients from her and send her home if necessary.[28] The physician was "upset" by this directive, relayed the conversation to multiple nurses, and told Dr. Falterman that he should "take up any issues he had with Ms. Burchfield directly with her."[29] Even so, the directive, according to Burchfield, was a "*de facto* demotion."[30]

According to Burchfield, the combination of these acts made Burchfield feel that her job was in jeopardy and that SLMA was looking for reasons to terminate her.[31] Burchfield claims that she "was effectively wearing a scarlet letter as a direct result of the actions and inactions of SLMA and its representatives, all of which were taken solely against her rather than any of her male colleagues."[32] Those actions "led

---

[24] *Id.* ¶ 36.
[25] *Id.* ¶ 37.
[26] *Id.* ¶ 38.
[27] *Id.* ¶¶ 38, 69.
[28] *Id.* ¶ 39.
[29] *Id.* ¶ 40.
[30] *Id.* ¶ 41.
[31] *Id.*
[32] *Id.* ¶ 43.

to Ms. Burchfield's ostracization and humiliation."[33] She believed that SLMA would continue to find "disingenuous and illegitimate ways to criticize her performance," which would have led to her termination or the revocation of her privileges.[34] In turn, this could have "permanently and adversely affected Ms. Burchfield's professional reputation and record, including but not limited to the potential loss of her state licensure."[35] Believing that she was "left with no choice," Burchfield resigned on May 6, 2021.[36] Burchfield claims that her resignation constituted a constructive discharge.[37]

Burchfield then filed suit against SLMA alleging claims under Title VII and the Louisiana Employment Discrimination Law (LEDL) for sex-based discrimination, harassment and hostile work environment, and retaliation.[38] SLMA moved to dismiss Burchfield's claims,[39] and this Court denied in part and granted in part SLMA's motion.[40] Specifically, the Court denied SLMA's motion to dismiss as to Burchfield's Title VII discrimination claim based on the night-to-day shift changes and associated reduced compensation; dismissed with prejudice Burchfield's Title VII discrimination claims based on her paid administrative leave and Dr. Falterman's statement restricting her privileges, as well as her LEDL claims; and dismissed without prejudice Burchfield's Title VII constructive-discharge, retaliation, and hostile-work-

---

[33] *Id.* ¶ 45.
[34] *Id.* ¶ 46.
[35] *Id.* ¶ 47.
[36] *Id.* ¶ 45.
[37] *Id.* ¶¶ 39–47.
[38] ECF No. 1.
[39] ECF No. 10.
[40] ECF No. 18. Section R of the Court issued the order on SLMA's motion to dismiss Burchfield's original complaint. *Id.* The case was subsequently transferred to Section O. ECF No. 26.

environment claims, while granting Burchfield twenty-one days to amend her complaint as to those claims.[41] Burchfield then filed the amended and superseding complaint, alleging Title VII sex discrimination based on the night-to-day shift changes and constructive discharge, and Title VII harassment and hostile work environment.[42]

SLMA now moves under Rule 12(b)(6) for dismissal of the Title VII constructive-discharge claim and the Title VII harassment-and-hostile-work-environment claim.[43] Burchfield opposes.[44]

## II.    LEGAL STANDARD

A complaint must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). And a party may move to dismiss a complaint that fails to meet this requirement. *See* FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff[]." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008)). But the Court "may not rely upon conclusional allegations or legal conclusions disguised as factual allegations." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602–03 (5th Cir. 2001)).

---

[41] ECF No. 18.
[42] ECF No. 19.
[43] ECF No. 21. Burchfield's Title VII discrimination claim based on the night-to-day shift changes is not at-issue in the present motion.
[44] ECF No. 22.

To defeat a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Still, the complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* Ultimately, the Court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee*, 675 F.3d at 854 (quotation omitted).

## III.  ANALYSIS

### A. Title VII Constructive Discharge

Title VII prohibits an employer from discharging or otherwise discriminating against an individual based on sex. 42 U.S.C. § 2000e-2(a)(1). To plead a disparate-treatment claim under Title VII, an employee must allege facts plausibly showing "(1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (internal quotations omitted) (emphasis in original).[45]

---

[45] To evaluate a Title VII discrimination claim built on circumstantial evidence, courts apply the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires showing (1) that plaintiff is a member of a protected class; (2) that she was qualified for the position

Pleading an adverse employment action requires a plaintiff to allege facts "plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502–03 (5th Cir. 2023) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)). The criteria for adverse employment action are broad and not just limited to tangible or economic discrimination. *Id.* at 503 (holding that the "days and hours" one works are "quintessential 'terms or conditions'" of employment, and the "right to pick work shifts" based on seniority is a "privilege" of employment). But the allegation must contain more than "de minimis workplace trifles." *Id.* at 504–05.

Moreover, the "ultimate question" in a Title VII disparate treatment case is whether the adverse employment action was taken because of the employee's protected status. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)). "In . . . disparate-treatment cases   . . . discriminatory motive is required." *Jenkins v. City of Dallas, Texas*, 717 F. Supp. 3d 528, 537 (N.D. Tex. 2024) (quoting *Pacheco v.*

---

at issue; (3) that she suffered an adverse employment action by the defendant; and (4) that she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her protected class because of her protected status. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007), abrogated on other grounds by *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). If the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McCoy*, 492 F.3d at 557. This is only a burden of production, not of persuasion. *Id.* If the employer meets that burden, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason was not true but was a pretext for its real discriminatory purpose. *Id.*

While it can be "helpful to reference" this framework when deciding a Rule 12(b)(6) motion to dismiss, courts must avoid engaging in a "rigorous factual or evidentiary analysis" involving *McDonnell Douglas*. *Cicalese*, 924 F.3d at 767 (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). "Such inquiries are better suited to summary judgment." *Id.* At the motion to dismiss stage, the plaintiff need only "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [her] case plausible." *Id.* at 766 (emphasis in original) (quoting *Chhim*, 836 F.3d at 470).

*Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). At the pleading stage, while a plaintiff need not provide a "detailed statistical analysis," the evidence "must demonstrate some causal relationship—some 'because'—between the protected status and the adverse employment action." *Williams v. Louisiana on behalf of Dep't of Pub. Safety & Corr.*, No. 22-30385, 2023 WL 2366980, at *2 (5th Cir. Mar. 6, 2023). To be sure, courts do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions as true. *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022).

With this framework in mind, we turn to Burchfield's re-urged Title VII constructive-discharge claim.[46] To plead this claim successfully, Burchfield must allege (1) discriminatory conduct by SLMA (2) that led to her resignation. *Green v. Brennan*, 578 U.S. 547, 556 (2016). As to the first element, discriminatory conduct, Burchfield must plausibly "allege that working conditions became 'so intolerable that a reasonable person would have felt compelled to resign.'" *Mandujano v. City of Parr*, 786 F. App'x 434, 437 (5th Cir. 2019) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). This requires "a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Discrimination or "[m]ere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004). *See also Rich v. Texas Dep't of Crim. Just.*, No. H-15-1439, 2016 WL 2758030, at *5 (S.D. Tex. May 12, 2016)

---

[46] ECF No. 19 ¶¶ 39–47.

9

("Allegations of discrimination alone are insufficient to support constructive discharge."). The test is objective: whether a reasonable employee would have felt compelled to resign. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n.19 (5th Cir. 1994). The Fifth Circuit has deemed relevant the following factors in determining whether a reasonable person would have been compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Sacks v. Texas S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023) (citations omitted).

In her amended and superseding complaint, Burchfield alleges that the following adverse employment actions, independently and collectively, constitute discriminatory conduct that led to her May 6, 2021 resignation: (1) singling out Burchfield among her male colleagues by placing her on administrative leave; (2) reducing her compensation as a result of the night-to-day shift changes; (3) refusing to approve her single shift-swap despite company policy permitting such swaps; (4) the defamatory statements made by male SLMA employees, including Dr. Falterman, about her and her work; and (5) Dr. Falterman's instruction to another male physician to micromanage and scrutinize Burchfield's work.[47] The Court addresses each in turn.

---

[47] *Id.* ¶¶ 39–47. In reciting this list of factors, Burchfield uses qualifiers like "*inter alia*" and "including but not limited to" to hint at the existence of additional, uncharged misconduct. *See, e.g., id.* ¶¶ 41, 42, 45. Vague and generalized references do not bolster a claim. *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("We have consistently held that a vague complaint,

10

First, Burchfield fails to plead facts plausibly showing that her placement on paid administrative leave constituted discriminatory conduct so intolerable that a reasonable person would have felt compelled to resign.[48] That's because placement on paid leave did not adversely affect Burchfield's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). An "abeyance, standing alone, is not a materially adverse event" when a defendant is "paid during [her] suspension period." *Katz v. Wormuth*, No. 22-30756, 2023 WL 7001391, at \*7 (5th Cir. Oct. 24, 2023). *See also Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that a police officer placed on paid administrative leave for up to four months did not suffer an adverse employment action); *Lauderdale v. City of Arlington, TX*, No. CIV.A.3:00CV0553-L, 2002 WL 236673, at \*10 (N.D. Tex. Jan. 31, 2002), aff'd sub nom. *Lauderdale v. City of Arlington*, 58 F. App'x 596 (5th Cir. 2003) ("The placement of an employee on paid administrative leave or suspension with pay during the course of an investigation into the employee's conduct or performance does not constitute an adverse employment action."); *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) ("No Circuit has held that a simple paid suspension, in and of itself, constitutes an adverse employment action.") (collecting cases). To be sure, Burchfield does not allege that she lost pay or benefits while on leave, nor does she allege that her placement on leave—for a duration unspecified in the complaint and while SLMA investigated her treatment of the deceased patient—affected a term or condition of

---

without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.").

[48] ECF No. 19 ¶¶ 19–25.

her employment.[49] Relatedly, Burchfield fails to meet the high bar necessary to show that placement on paid leave is conduct so intolerable that a reasonable person would have felt compelled to resign. *See Brown*, 237 F.3d at 566; *McCoy v. City of Shreveport*, 492 F.3d 551, 558 (5th Cir. 2007), abrogated on other grounds by *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (finding that placement on paid administrative leave, combined with other factors, did not meet the standard for a constructive discharge). In addition, Burchfield's amended and superseding complaint, much like her original complaint, lacks nonconclusory facts supporting a discriminatory motive for her placement on leave.[50]

Second, the Court is not persuaded that SLMA's decision to switch Burchfield from night shifts to day shifts after her return from leave constitutes conduct so intolerable that a reasonable person would have felt compelled to resign.[51] Burchfield

---

[49] *Id*.

[50] *Id*. SLMA informed Burchfield that she had been placed on leave because she was the subject of an active investigation regarding the treatment of the deceased patient. *Id*. ¶ 22. But Burchfield claims that the male physicians who also treated the patient were not placed on leave even though at least one of them, Dr. Brooks, was also the subject of an investigation. *Id*. ¶¶ 21–24. While the Court avoids application of the *McDonnell Douglas* framework to this motion to dismiss, it's relevant that Burchfield does not plead circumstantial facts supporting the inference that, as a nurse practitioner, she was "similarly situated" to the male physicians who were not placed on administrative leave. *See Coleman v. Kijakazi*, No. 21-10399, 2023 WL 2660167, at *2 (5th Cir. Mar. 28, 2023) ("For a comparator to be similarly situated, . . . they must be 'under nearly identical circumstances.'" (citation omitted)); *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications."). It is true that when a plaintiff plausibly alleges similarly situated comparators, the Court must not scrutinize whether the comparators are "really 'similarly situated'" on a motion to dismiss. *See Cicalese*, 924 F.3d at 768 (involving allegations that two professors of surgery and medicine at a university medical center were similarly situated to other medical professors with allegedly less experience). Nevertheless, the lack of any factual basis for this element only further supports the Court's determination that Burchfield's constructive-discharge claim does not survive a Rule 12(b)(6) motion. *See Raj*, 714 F.3d at 331 (affirming district court's dismissal of Title VII disparate-treatment claim when plaintiff "did not allege any facts, direct or circumstantial," suggesting that his employer treated similarly situated employees outside of his protected class more favorably).

[51] ECF No. 19 ¶¶ 26–32.

claims that she was historically permitted to work night shifts, for which she earned $4.00 more per hour, and that SLMA switched her to day shifts despite "her historic known preference."[52] But Burchfield does not allege how many shifts were impacted by this switch. She does not allege that she had been guaranteed night shifts as a term, condition, or privilege of her employment. And she does not allege that the switch was permanent. The denial of Burchfield's preference for an unspecified number of shifts over an unspecified time period does not plausibly allege a claim so severe and intolerable that an objective, reasonable employee would have felt compelled to resign.[53]

Third, Dr. Falterman's single denial of Burchfield's request to swap shifts with another employee does not support a plausible constructive-discharge claim.[54] Burchfield's shift-swap request was a lone episode, and a "few, isolated instances" of harassment are "not so intolerable that a reasonable person [in plaintiff's] position would have felt compelled to resign." *Judeh v. T-Mobile Cent. LLC*, No. CV 22-1130, 2023 WL 246843, at *5 (E.D. La. Jan. 18, 2023) (finding the "several instances of harassment that plaintiff endured . . . [were] not sufficiently severe or pervasive to state a claim for constructive discharge") (quotations and brackets omitted). *See also*

---

[52] *Id.*

[53] In her amended and superseding complaint, Burchfield adds that she would have been fully vested in her retirement plan as of July 1, 2021. *Id.* ¶ 45 n.3. Relegating this fact to a footnote, Burchfield alleges that SLMA's actions caused her to lose thousands of dollars in benefits. However, this alleged pay reduction in the form of potential future retirement benefits is speculative, and it's unclear what benefits Burchfield was set to receive under the retirement policy or how it furthers her claim that she withstood "intolerable" working condition. Even so, Burchfield fails to adequately brief this claim. *See Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (holding that a party forfeited an argument on an issue by failing to adequately brief it). Accordingly, any additional claim based on loss of retirement benefits has been forfeited.

[54] ECF No. 19 ¶¶ 33–38.

*Martin v. American Midstream Partners, LP*, 386 F. Supp. 3d 733, 740 (E.D. La. May 15, 2019) (dismissing constructive discharge claim when African American plaintiff alleged that a noose was left in his workspace). Moreover, Burchfield fails to show a sex-based motive behind the denial of her lone shift-swap request. And Burchfield does not allege that other female employees were prohibited from swapping shifts. In fact, Burchfield acknowledges that "only [she] was suddenly prohibited from swapping shifts without advance notice to her supervisor," while suggesting that "every other SLMA employee" could change shifts without advanced notice.[55]

Fourth, Burchfield fails to allege sufficient facts supporting the inference that defamatory statements by Dr. Falterman and two other male physicians give rise to an actionable constructive-discharge claim.[56] Burchfield alleges that the physicians made false and defamatory statements about her and her care of the deceased patient, and concludes that her sex must have been the motivation for these statements because the physicians made no such statements about any male SLMA employees involved in the patient's treatment.[57] But Burchfield has not alleged the content of the defamatory statements. Nor has Burchfield plausibly alleged that the statements were made because of Burchfield's sex. Rather, Burchfield admits that the defamatory remarks were based on her performance during the January shift: claiming the physicians made "false and defamatory statements regarding her job performance and care and treatment of the Patient."[58] *See Credeur v. Louisiana*

---

[55] *Id.* ¶¶ 38, 69.
[56] *Id.* ¶¶ 14–15.
[57] *Id.*
[58] *Id.* ¶ 42.

*Through Off. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017) ("Criticism of an employee's work performance . . . and even threats of termination do not satisfy the standard for a harassment claim."); *Rich*, 2016 WL 2758030, at *5 (finding newly hired plaintiff's alleged harassment, stemming from an officer yelling that she was a "trainee" for failing to understand instructions, was insufficiently connected to plaintiff's gender to be actionable under Title VII).

Fifth, Dr. Falterman's directive to a male attending physician to monitor Burchfield's work fails to meet the level of harassment sufficient for a constructive-discharge claim.[59] Burchfield claims that Dr. Falterman's "interaction and directive . . . effectively constituted a *de facto* demotion."[60] But Burchfield does not claim that the attending physician acted on Dr. Falterman's directive. Rather than a "demotion," Dr. Falterman's directive was at most an unfulfilled threat that had no genuine impact on Burchfield's employment. Even so, micromanagement or heightened scrutiny in the workplace is not a sufficient basis for constructive discharge. *See Inocencio v. City of Houston*, 2018 WL 11250529, at *10 (S.D. Tex. Mar. 13, 2018) ("[I]ncreased scrutiny does not constitute an intolerable working condition."). "[H]aving one's work micromanaged may be unpleasant but does not constitute a greater degree of harassment than that required by a hostile environment claim." *Haley v. All. Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (quotations and citations omitted). This is particularly so when, as here, the alleged directive occurred "in or around May 2021," only a few days before Burchfield's resignation on May 6,

---

[59] *Id.* ¶¶ 39–41.
[60] *Id.*

15

2021.[61] On top of all this, Burchfield makes no plausible claim that Dr. Falterman's directive was based on Burchfield's sex. Merely alleging, in conclusory fashion, that Dr. Falterman intended to "single out [Burchfield] among her male colleagues" is not sufficient.[62] *See Allen v. Hammond City Police Dep't*, No. CV 19-12117, 2020 WL 433359, at *5 (E.D. La. Jan. 28, 2020) (dismissing plaintiff's Title VII constructive-discharge claim where plaintiff failed to identify allegations showing alleged micromanagement was motivated by plaintiff's race or sex).

Furthermore, as it relates to all five instances of alleged misconduct, Burchfield has not offered facts supporting the inference that, acting reasonably, Burchfield was compelled to resign when she did. *See Haley*, 391 F.3d at 652 ("[A] reasonable employee who genuinely felt these working conditions were upsetting to the point of intolerable would have attempted resolution of these concerns before choosing to quit after just over two weeks back on the job."). Burchfield was placed on paid leave on March 1. The amended and superseding complaint is silent as to when she returned from leave, but it was after her return that most of SLMA's alleged misconduct occurred. Burchfield resigned on May 6, a little more than two months after being placed on leave. Burchfield asserts no facts suggesting that, during this time, she attempted to resolve her concerns with SLMA before quitting or that it was necessary to quit when she did. "In the constructive discharge context, [the Fifth Circuit] ha[s] recognized that part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Aryain*

---

[61] *Id.* ¶¶ 39, 45.
[62] *Id.* ¶ 42.

*v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 481 (5th Cir. 2008) (quotations and citations omitted) (emphasis in original). Burchfield has not alleged conduct suggesting that her working conditions, from the standpoint of a reasonable employee, had become so unbearable that she was forced to resign on May 6.

In conclusion, this Court finds that none of Burchfield's re-urged allegations, viewed independently and cumulatively, sufficiently alleges harassment so extreme that a reasonable employee would have felt compelled to resign. Although Burchfield seeks to underscore the "collective impact of SLMA's actions,"[63] she has not plausibly claimed that SLMA engaged in conduct so discriminatory and intolerable as to involve a greater degree of harassment than that required by a hostile-environment claim. *See Twombly*, 550 U.S. at 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Accordingly, the Court dismisses Burchfield's Title VII constructive-discharge claim.

## B. Title VII Harassment and Hostile Work Environment

SLMA also moves to dismiss Burchfield's amended hostile-work-environment claim.[64] To state a claim for hostile work environment under Title VII, Burchfield must allege that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her membership in a protected class]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

---

[63] ECF No. 22 at 10.
[64] ECF No. 21-1 at 16–22.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted). A plausible claim exists only when the harassing conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (quotations omitted). This standard requires extreme conduct, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted). In evaluating these claims, courts consider the totality of the circumstances, including "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quotation omitted). A plaintiff must subjectively perceive the environment to be abusive; as well, the environment must be objectively hostile or abusive. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22 (1993).

In Burchfield's amended and superseding complaint, she alleges that SLMA subjected her to harassment "through a series of actions and inactions" that created a hostile work environment.[65] That harassing conduct included: (1) the defamatory statements by the male physicians about Burchfield and her job performance; (2) placing only her, and none of the male doctors from the January shift, on paid

---

[65] ECF No. 19 ¶¶ 62–71.

administrative leave; (3) scheduling her for less favorable day shifts resulting in a pay reduction, while giving a less experienced male coworker her typical night shifts; (4) denying her request to swap a shift despite the historical practice permitting swaps; and (5) instructing a male attending physician to watch Burchfield closely and to take patients from her or send her home if needed.[66] Again, the Court takes each in turn.

First, as to the alleged defamatory statements, Burchfield acknowledges that the statements pertained to "Ms. Burchfield and Ms. Burchfield's evaluation and treatment of the Patient."[67] Burchfield makes no plausible claim that the alleged defamatory statements were based on her sex. *See Decou-Snowton v. Par.*, No. CV 21-1302, 2022 WL 4245492, at \*7 (E.D. La. Sept. 15, 2022) ("No matter how toxic or unpleasant the environment was, [plaintiff] points to no comments or actions that were based on race or gender, thus, nothing sustains a race- or gender-based hostile work environment claim."). Nor does Burchfield allege facts permitting the Court to conclude that the statements were "sufficiently severe or pervasive" to meet the bar for a hostile-work-environment claim. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "[V]ague factual and conclusory allegations," such as the ones advanced by Burchfield, are insufficient. *Chhim v. Univ. of Houston Clear Lake*, 129 F. Supp. 3d 507, 515–16 (S.D. Tex. 2015).

Next, Burchfield's administrative leave allegation is insufficient to plead a hostile-work-environment claim. Burchfield alleges that she was placed on paid

---

[66] *Id.* ¶ 67.
[67] *Id.* ¶¶ 14, 42, 45.

19

administrative leave after the January shift, while Dr. Brooks, the "male attending physician overseeing and ultimately responsible for the [p]atient's care," was not.[68] But Burchfield fails to assert that she lost compensation or benefits while on leave. She similarly fails to allege plausibly that her temporary paid leave affected a term, condition, or privilege of her employment at SLMA. *See Katz*, 2023 WL 7001391 at *7. Accordingly, Burchfield has not adequately pleaded a hostile-work-environment claim based on her paid administrative leave.

Third, Burchfield's contention that she experienced harassment when she was scheduled for day shifts, while a less experienced male employee was assigned her preferred night shifts, is insufficient to support a hostile-work-environment claim. The Court does not find that scheduling Burchfield for an unspecified number of day shifts over an unspecified time period alleges conduct so severe or pervasive as to constitute harassment. *See Rivera v. Potter*, No. SA-06-CV-580-XR, 2007 WL 3224739, at *5 (W.D. Tex. Oct. 31, 2007) (finding that plaintiff's lateral transfer and requirement to work "unfavorable" schedule failed to create a hostile work environment).

Similarly, Burchfield's fourth claim, stemming from the singular denial of her request to swap shifts, also fails. A singular denial of a schedule change is not "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 917 (5th Cir. 2006) (citations omitted). Moreover, Burchfield fails to allege plausibly that the shift-swap

---

[68] *Id.* ¶ 23.

denial was based on her sex, when she admits in her amended and superseding complaint that "every other SLMA employee"—suggesting both male and female employees—could change shifts at will.[69]

Finally, Burchfield fails to plead a plausible claim of harassment based on Dr. Falterman's directive to another physician that he should monitor her work. To be sure, Burchfield's claim must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is unable to draw such an inference here. Burchfield does not allege that the physician receiving Dr. Falterman's directive took any action against Burchfield. Nor has she alleged plausibly that the directive targeted her based on her sex. Because she fails to show that SLMA's work environment was "sufficiently severe or pervasive" to alter the conditions of her employment and create an abusive working environment, her hostile-work-environment claim fails. *See Ramsey*, 286 F.3d at 268.

For all these reasons, Burchfield fails to assert facts, individually or cumulatively, that reasonably establishes a hostile-work-environment claim. Accordingly, this claim is dismissed.

## C. Title VII Retaliation Claim

The Court previously granted Burchfield leave to amend her Title VII retaliation claim, finding she failed to plead sufficient facts in her original complaint.[70] However, as SLMA points out, Burchfield does not reassert a Title VII

---

[69] *Id.* ¶¶ 38, 69.
[70] ECF No. 18

retaliation claim in her amended petition.[71] It is well-established that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Here, Burchfield does neither. Accordingly, the Court finds that this claim has been abandoned and is dismissed.

## IV.   CONCLUSION

Rule 15(a) provides that district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although Rule 15(a) requires the district court to grant leave to amend freely, leave to amend is in no way automatic." *Body by Cook, Inc. v. State Farm Auto. Ins.*, 869 F.3d 381, 391 (5th Cir. 2017) (cleaned up). The district court maintains discretion to deny leave to amend based on a variety of factors, including the futility of the amendment. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). And dismissal with prejudice is appropriate if a court finds that the plaintiff has alleged her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

In the instant case, the Court previously granted Burchfield leave to amend her complaint after dismissing without prejudice the same claims at issue here. To its detriment, the amended and superseding complaint has virtually the same defects

---

[71] ECF No. 19.

that gave rise to the initial dismissal. Having been given an opportunity to cure those defects by amendment and having alleged her "best case," the Court finds that further amendment would be futile. Accordingly,

**IT IS ORDERED** that the motion[72] to dismiss is **GRANTED**. The plaintiff's Title VII constructive-discharge, hostile-work-environment, and retaliation claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 26th day of August, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[72] ECF No. 21.

23